IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:17-CV-22190-MOORE/SIMONTON

| | |
|---|---|
| CITI CARS, Inc. a Florida corporation | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COX ENTERPRISES, INC. | ) |
| A Delaware Corporation | ) |
| | ) |
| COX AUTOMOTIVE, INC. | ) |
| A Delaware Corporation | ) |
| | ) |
| MANHEIM AUCTION, LLC | ) |
| A Delaware Limited Liability Corporation | ) |
| | ) |
| NEXTGEAR CAPITAL, INC. | ) |
| A Delaware Corporation, | ) |
| | ) |
|      Defendants. | ) |
| _____ | ) |

## MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS

Defendants Cox Enterprises, Inc., Cox Automotive Inc., Manheim Auction, LLC, and NextGear Capital, Inc. (collectively, "Cox" or "Defendants"), by and through undersigned counsel and pursuant to Sections 2 and 3 of the Federal Arbitration Act (9 U.S.C. §§ 2 and 3), move this Court to enter an Order staying the case filed by Plaintiff and referring all claims to binding arbitration in accordance with the parties' valid and enforceable arbitration agreement.

In the alternative, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1, Cox move to dismiss the Complaint (Doc. 1) for failure to state a claim under which relief can be granted.

## INTRODUCTION

By this lawsuit, Plaintiff attempts to avoid the explicit terms of a bargained-for contract with Defendants by bringing meritless antitrust claims that are devoid of any substance and legally deficient.  The timing of Plaintiff's complaint—filed 6 months after filing its bankruptcy petition where Defendant NextGear Capital, Inc. ("NextGear") is one of its major creditors—is telling.  For more than a decade, Plaintiff has allegedly purchased used vehicles by attending Defendant Manheim Auction, LLC ("Manheim") auctions.  Plaintiff alleges that it has purchased nearly 2,000 vehicles through Manheim auctions during that time.  Four years ago, Plaintiff entered into a financing arrangement with NextGear to help facilitate those purchases.  Plaintiff willingly entered into that financing arrangement, attended Manheim's auctions, and for many years benefited from its relationship with Defendants.  It is only now, after Plaintiff's financial situation deteriorated and it sought bankruptcy protection, that it claims Defendants have somehow violated the antitrust laws.  But Plaintiff's antitrust claims should be seen for what they are—a naked attempt to escape contractual obligations by sounding a false antitrust alarm.[1]  As a matter of law, they do not stand up to even the most cursory evaluation and should be dismissed.

The Court need not, however, reach the merits of Plaintiff's claims since those claims are subject to arbitration.  Under the express terms of Plaintiff's financing arrangement with NextGear, Plaintiff agreed to arbitrate any and all disputes or claims it has with Defendants.  Likewise, parties that participate in Manheim auctions, including Plaintiff, agree to be bound by its Terms and Conditions, which provide for mandatory arbitration of any disputes or claims.  The Court should

---

[1] Although the Complaint is littered with Plaintiff's grievances about the terms of its arrangement with NextGear, notably absent are factual allegations demonstrating that Defendants have in any way breached the terms of their agreement with Plaintiff, nor has Plaintiff brought a separate breach of contract claim.

hold Plaintiff to its promises and dismiss or stay the case against Defendants and should compel Plaintiff to follow the dispute resolution process to which it agreed with Defendants.

Even if Plaintiff's claims were not subject to arbitration, they would fail as a matter of law. Plaintiff's Complaint is devoid of any factual allegations (as opposed to legal conclusions) even remotely suggesting that Defendants have acted to restrain trade or monopolize any relevant market in violation of the antitrust laws. Among the many fatal defects in the Complaint is Plaintiff's failure to allege, as is required to state an antitrust claim, any facts defining the relevant market, demonstrating that Defendants have monopoly power in a relevant market, or identifying any conduct by Defendants that could plausibly be viewed as "exclusionary." Plaintiff likewise has failed to allege the requisite concerted action necessary to support its Sherman Act Section 1 claim, provides no facts relating to any anticompetitive acquisitions by Defendants as required to bring a claim under Section 7 of the Clayton Act, and fails to allege facts showing that Defendants have engaged in price discrimination, which is a necessary predicate for claims brought under the Robinson-Patman Act.

Nor has Plaintiff suffered antitrust injury—a threshold requirement to sustain an antitrust claim. To the extent Plaintiff has alleged any cognizable "harm," that harm appears to relate almost entirely to the financing arrangement with Defendants into which Plaintiff willingly and knowingly entered. The harm allegedly suffered by Plaintiff was largely self-inflicted and the result of its own business failings, not some competition-reducing conduct by Defendants.

Plaintiff's remaining claims, for violation of the FTC Act and civil conspiracy, are equally fallacious. The FTC Act does not provide for a private right of action, and Plaintiff fails to plead any of the elements of a civil conspiracy claim or facts supporting the existence or nature of the purported conspiracy.

## BACKGROUND

Manheim is a provider of vehicle remarketing services, connecting buyers and sellers of wholesale used cars through its network of traditional and mobile auction sites.  Plaintiff is a used vehicle retail car dealer with a previous location in Opa Locka, Florida. (Cmpt. ¶ 1).  Beginning in 2006, Plaintiff attended Manheim auctions in several Florida locations, purchasing a total of 1,880 vehicles at Manheim auctions since that time. *Id*. at ¶¶ 39, 30.  Plaintiff initially used cash to purchase vehicles at Manheim auctions. *Id*. at ¶ 40.

NextGear is a provider of lending products, including flexible lines of credit for dealers to purchase new and used vehicles at various auctions and from other inventory sources.  In 2013, Plaintiff entered into a financing arrangement with NextGear and was approved for a $250,000 line of credit, which was later increased to $500,000. *Id*. at ¶ 44.   In November 2016, Plaintiff ceased making payments under the arrangement with NextGear, and in December 2016 filed for bankruptcy protection. *Id*. at ¶¶48-49.  Shortly after Plaintiff filed for bankruptcy, Defendants suspended Plaintiff's line of credit. *Id*. at ¶ 54.

Defendant Cox Enterprises, Inc. is the parent company of both Manheim and NextGear, as well as Defendant Cox Automotive, Inc. *Id*. at ¶ 13.

### The Credit-Contract

The financial relationship between Plaintiff and NextGear is governed by the Credit-Contract ("Contract") attached as Exhibit A to the Complaint.  *Id*. at ¶ 42.  Section 22 of the Addendum to the Contract contains a binding and enforceable arbitration clause.  The arbitration clause provides, in relevant part:

> In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim.  This agreement to arbitrate is intended to be broadly interpreted and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any

other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document.

Complaint at Exhibit A, Addendum to Demand Promissory Note and Loan and Security Agreement, § 22(a).[2] "Any dispute or claim subject to arbitration pursuant to this Section 22 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS")…" *Id.* at § 22(d).

As previously noted, Plaintiff has purchased numerous vehicles at Manheim auctions. These purchases, in conjunction with the lending agreement (*e.g.*, the Contract), form the basis of Plaintiff's relationship with Cox. *See, e.g.*, Complaint at ¶¶ 26, 29, 39-42. All parties attending Manheim auctions are subject to the Manheim Terms and Conditions, which are attached as Exhibit 2 to this motion.[3] Like the Contract, the Manheim Terms and Conditions also provide for mandatory and binding arbitration administered by JAMS. Exhibit 2 at § 26(a). Section 26(a) of the Manheim Terms and Conditions states, in relevant part:

> YOU AGREE TO ARBITRATE ANY DISPUTE OR CLAIM THAT YOU MAY HAVE WITH MANHEIM THAT ARISES OUT OF OR RELATES IN ANY WAY TO THESE TERMS AND CONDITIONS; ANY PURCHASE, SALE, OR OTHER AUCTION OR CREDIT TRANSACTION WITH MANHEIM; YOUR USE OF ANY MANHEIM WEBSITE, ONLINE PORTAL OR ANY MANHEIM PRODUCT OR SERVICE; OR ANY OTHER AGREEMENT BETWEEN YOU AND MANHEIM. ARBITRATION CONDUCTED HEREUNDER SHALL BE FINAL AND BINDING. THIS ARBITRATION PROVISION MEANS THAT YOUR CLAIMS AGAINST MANHEIM WILL BE RESOLVED THROUGH ARBITRATION RATHER THAN LITIGATION IN COURT.

---

[2] The relevant arbitration provision has also been attached as Exhibit 1 to this motion.

[3] The Manheim Terms and Conditions are also publicly available online: https://publish.manheim.com/en/marketplace-policies/us-policies/manheim-terms-and-conditions.html

*Id.* (emphasis original); *see also id.* at § 26(d) (referring arbitration to JAMS).

## ARGUMENT AND MEMORANDUM OF LAW

**I.  The Federal Arbitration Act Requires Enforcement of the Arbitration Agreement.**

The FAA governs whether Plaintiff's claims in this case must be resolved in arbitration. Section 2 of the FAA provides that an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract," and Section 3 mandates that when the parties have agreed to arbitration, courts must stay a pending suit on the application of either party in favor of arbitration.  9 U.S.C. §§ 2 and 3.

"Under the FAA, upon motion of a party, district courts must compel arbitration of all claims subject to arbitration." *American Express Fin. Advisors v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997).  Moreover, the FAA creates a presumption in favor of arbitrability; therefore, in order to exclude certain disputes from arbitration, parties must clearly express their intent to do so. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1320 (11th Cir. 2002).

The Eleventh Circuit "has stressed that a party opposing the enforcement of an arbitration clause 'bears a heavy burden of proof' based on federal policy favoring arbitration." *Prescott Architects, Inc. v. Lexington Ins. Co*., 638 F. Supp. 2d 1317, 1324 n.14 (N.D. Fla. 2009) (quoting *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990)).  Further, "[a]bsent some ambiguity in the arbitration provision, the language of the provision defines the scope of the disputes subject to arbitration." *FusionStorm, Inc. v. Presidio Networked Solutions, Inc.*, 871 F. Supp. 2d 1345, 1353 (M.D. Fla. 2012).  Here, based on the broadly drafted arbitration provisions referring all disputes and claims to arbitration and the presumption in favor of arbitrability, the

FAA requires arbitration of Plaintiff's claims.  *Jones v. Waffle House, Inc.*, No. 16-15574, 2017 U.S. App. LEXIS 14497 (11th Cir. Aug. 7, 2017).

The FAA governs an arbitration provision if (1) there is a written agreement to arbitrate; and (2) the contract evidences a transaction involving commerce.  9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995).  Here, there can be no reasonable dispute that the FAA governs.  The parties' relationship is governed by two independent, valid, and enforceable written agreements to arbitrate, which consistently refer any disputes or claims between the parties to binding arbitration by JAMS:  1) the Contract, which Plaintiff attached to the Complaint, Exhibit 1 at § 22; and 2) the Manheim Terms and Conditions.[4]  Exhibit 2 at § 26.[5]

Section 2 of the FAA provides that the arbitration provision "shall be ***valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  "In determining whether certain claims are subject to an arbitration provision, the Court must determine (1) whether the parties agreed to arbitrate the dispute, and (2) if so, whether legal constraints external to the agreement foreclose the arbitration of those claims."  *Matute v. Main St. Acquisition Corp.*, No. 11-cv-62375-KMW, 2012 U.S. Dist. LEXIS 142589, *3 (S.D. Fla. Oct. 2 2012).

Both the Contract and the Manheim Terms and Conditions provide that all disputes or claims are subject to arbitration.  Exhibit 1 at § 22(a); Exhibit 2 at § 26(a).  The Eleventh Circuit

---

[4] There is no requirement that an arbitration agreement even be signed in order to be binding upon the parties to the agreement; to be enforced, the agreement must simply be provided to the parties in writing, and the parties may indicate their acceptance to the agreement by their respective conduct. *See, e.g., Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368-69 (11th Cir. 2005).  Here, Plaintiff indicated its acceptance of the Manheim Terms and Conditions by choosing to participate in Manheim auctions.

[5] The Manheim Terms and Conditions are central to any claims related to the purchase of vehicles at Manheim auctions.  Since Plaintiff references purchasing vehicles at Manheim auctions throughout the Complaint, *see, e.g., id.* at ¶¶ 26, 29, 39-42, the Manheim Terms and Conditions are properly considered by this Court pursuant to the incorporation by reference doctrine.  *Kynes*, 2013 U.S. Dist. LEXIS 125309 at *10-12.

has described arbitration clauses that, like the Contract and Manheim Terms and Conditions, provide for arbitration of "any" or "all" disputes as "broadly drafted." *Blinco v. Green Tree Serv., LLC*, 400 F.3d 1308, 1311 (11th Cir. 2005) (describing as "broadly drafted" a clause requiring arbitration of "all disputes, claims or controversies arising from or relating to the contract or the relationships which result from the contract"). When faced with such a broad arbitration clause, "parties must clearly express their intent to exclude categories of claims from their arbitration agreement" in order to remove them from consideration by the arbitrators. *Paladino v. Avnet Computer Techs.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). Both provisions are consistent, and there is no evidence that Plaintiff opted out of either provision or that Cox waived arbitration. Neither the Contract nor the Manheim Terms and Conditions exclude Plaintiff's claims as stated in the Complaint. *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("The agreement reaches this dispute because the agreement reaches any and all disputes.").

Both domestic and international antitrust claims have been held to be arbitrable since the U.S. Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985). *See Kotam Elecs. v. JBL Consumer Prods.*, 93 F.3d 724, 726-28 (11th Cir. 1996) (discussing *Mitsubishi* and holding that "domestic antitrust claims are therefore arbitrable."); *see also Meyer v. Uber Techs., Inc.*, No. 16-2750-cv, 16-2752-cv, 2017 U.S. App. LEXIS 15497 (2d Cir. Aug. 17, 2017) (vacating denial of motion to compel arbitration in case involving price fixing allegations.). Therefore, the Complaint must be compelled to arbitration, and the Plaintiff's claims stayed accordingly. *Jones*, 2017 U.S. App. LEXIS 14497 at *4 (vacating denial of motion to compel arbitration and remanding with instructions to stay the case pending arbitration); *see also Shea v. BBVA Compass Bancshares, Inc.,* No. 1:12-cv-23324-KMM, 2013 U.S. Dist. LEXIS

31906, *20 (S.D. Fla. Mar. 7, 2013) ("this Court finds that [the Motion to Compel Arbitration] should be granted because Defendant has demonstrated that there is a valid written agreement to arbitrate and that an arbitrable issue exists.") (Moore, J.).[6]

## II.     The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient, non-conclusory factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Satisfying this burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.   "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Edge Sys. LLC v. Aguila*, No. 1:14-cv-24517-KMM, 2015 U.S. Dist. LEXIS 144830, *7 (S.D. Fla. Oct. 26, 2015) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).   A plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly,* 550 U.S. at 555).

### A.     Plaintiff's Antitrust Claims Should Be Dismissed as a Matter of Law.

Counts I and III of Plaintiff's Complaint allege violations of federal antitrust law, including Sections 1 (restraint of trade) and 2 (monopolization) of the Sherman Act, Section 7 of the Clayton Act, and the Robinson-Patman Act. Those claims fail as a matter of law.

---

[6] Arbitration should be compelled in the fora as provided for in the relevant agreements.  *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1304 (11th Cir. 2014); *Berger v. Accounting Fulfillment Servs. LLC*, No. 8:16-cv-744-T-30JSS, 2016 U.S. Dist. LEXIS 88782, *13 (M.D. Fla. July 8, 2016).

A plaintiff alleging a violation of Section 1 of the Sherman Act must show an agreement between two or more persons having an anticompetitive effect on a relevant market, and that the defendant's conduct has no pro-competitive benefit or justification. *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir.1996).  In alleging the anticompetitive effect of the defendant's conduct, an antitrust plaintiff must show harm to competition rather than to competitors. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004).  A monopolization claim under Section 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Morris Communications Corp. v. PGA Tour, Inc*., 364 F.3d 1288, 1293-94 (11th Cir. 2004) (*citing United States v. Grinnell Corp*., 384 U.S. 563, 570-71 (1966)).

### i.        Plaintiff Has Not Pled a Proper Relevant Market.

Plaintiff has failed to plausibly allege a legally cognizable relevant market, which must include definition of both a relevant product market and a relevant geographic market.  *See Jacobs v. Tempur-Pedic International, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010); *Levine v. Central Florida Medical Affiliates*, 72 F.3d 1538, 1555 (11th Cir. 1996).  The relevant product market must be defined by alleging ***facts*** regarding substitute and non-substitute products and relating to cross-elasticity of demand. *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962). "[D]efining a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability – actual or potential – to take significant amounts of business away from each other." *Polypore Int'l, Inc. v. FTC*, 686 F.3d 1208, 1217 (11th Cir. 2012).  The relevant geographic market is generally defined as the "area

of effective competition," or "the area in which the product or its reasonably interchangeable substitutes are traded." *L.A. Draper & Son v. Wheelabrator-Frye*, Inc., 735 F.2d 414, 423 (11th Cir. 1984). The focus must be the area to which purchasers "can practically turn for such [relevant] products or services." *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985).

The Complaint contains no factual allegations defining either the relevant product or geographic market, and therefore Plaintiff's antitrust claims must fail as a matter of law. Not only are such allegations wholly absent from Plaintiff's Complaint, the allegations that do appear in the Complaint are conclusory in nature and inherently inconsistent. At various points in the Complaint, Plaintiff alleges that Defendants' conduct has affected "competition for the purchase and sale of used vehicles" (Cmpt. ¶ 7), the market for "the resale of wholesale used vehicles" (Cmpt. ¶ 17), "competition for the purchase of wholesale used cars" (Cmpt. ¶ 36), "the market for…wholesale used cars" (Cmpt. ¶ 66), and "the used car market." (Cmpt. ¶ 81). Plaintiff's allegations regarding the relevant geographic market are equally scattershot, with the market alternately being referred to as "the United States market" (Cmpt. ¶ 17), "the United States as well as Europe and Asia." (Cmpt. ¶ 17), "the Southern District of Florida, and around the rest of the United States" (Cmpt. ¶ 66), and "global" (Cmpt. ¶ 17).

Plaintiff's failure to adequately define the contours of the relevant product and geographic markets is fatal to its antitrust claims. But regardless of what Plaintiff intended the alleged relevant market to be, it strains credulity to suggest that Manheim—indeed, anyone for that matter—could somehow monopolize the market for used cars. Even the most cursory of inquiries reveals numerous potential "suppliers" of used vehicles, including automotive dealerships, banks and other financial institutions, car rental agencies, car manufacturers, businesses and government

agencies selling fleet vehicles, and the thousands of individuals that sell their vehicles each year. To suggest that in such a highly fragmented space one company could obtain a monopoly or somehow adversely impact pricing is entirely disingenuous and exposes the implausibility of Plaintiff's claims.

### ii.      Plaintiff Cannot Establish Monopoly Power in Any Relevant Market.

Even if Plaintiff had properly defined the relevant market, it nevertheless fails to establish that Defendants possess monopoly power in that market.  The Complaint's only "evidence" of Defendants' monopoly power is a conclusory statement that Defendants represent "at least an eighty-six (86%) percent market share [of] the United States market for the resale of wholesale used vehicles…." (Cmpt. ⁋ 17).  However, a finding of monopoly power requires more than just an unsubstantiated estimate of market share.   "While market share is a measure of gauging monopoly power … it is not enough to establish a prima facie show of monopoly power." *Fin-S Tech, LLC v. Surf Hardware Int'l-USA Inc*., No. 13-CV-80645-RYSKAMP/HOPKINS, 2014 U.S. Dist. LEXIS 197192, *8 (S.D. Fla. Sep. 3, 2014).  Rather, to sufficiently allege monopoly power requires Plaintiff to allege specific facts such as "the strength and capacity of current competitors; the potential for entry; the historic intensity of competition; and the impact of the legal or natural environment." *U.S. Anchor Manufacturing, Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 994 (11th Cir. 1993).  The Complaint contains no such allegations, and Plaintiff's factually unsupported assertion regarding Defendants' market share falls far short of what is required to allege the existence of monopoly power.   The only "facts" alleged in the Complaint relating to these additional elements is that Auto Nation, Inc. "recently has established its own auctions in Florida to attempt to compete in the Market" (Cmpt. ⁋ 21), and ADESA is a "major competitor" to Defendants (Cmpt. ¶ 20).  If anything, these allegations suggest a competitive market that is

growing more robust with entry from new competitors.  In short, Plaintiff's factually unsupported assertion regarding Defendants' market share falls far short of what is required to allege the existence of monopoly power.

### iii. Plaintiff Fails to Allege That Defendants Engaged in Exclusionary Conduct.

Plaintiff's claims under Sherman Act Section 1 and Section 2 also must fail because Plaintiff does not, and cannot, plead ***facts*** demonstrating that any of the Defendants has engaged in exclusionary conduct, *i.e.,* conduct that harms the competitive process and involves the acquisition or maintenance of monopoly power through improper means,[7] or conduct that raises prices and reduces output.[8]  To state a claim, Plaintiff must provide "specific allegations linking market power to harm to competition in [the] market." *Jacobs*, 626 F.3d at 1339 (*citing Spanish Broad. Sys.*, 376 F.3d at 1073).

Although the Complaint is peppered with references to "price-fixing," "market allocation," "resale wholesale price and price-maintenance," and other antitrust jargon, Plaintiff nowhere backs up these statements with any ***facts*** from which this Court could conclude that Defendants have engaged in any exclusionary conduct.  The Supreme Court has made clear that it simply is not sufficient for a Plaintiff to rely on formulaic labels and legal conclusions to piece together a legal theory of antitrust liability lacking in any factual substance when the thin veneer of antitrust terminology is stripped out of the story. *See Twombly*, 550 U.S. at 555.

The only conduct-specific "facts" Plaintiff alleges relate to purported exclusive dealing arrangements that Defendant Manheim has with certain unnamed "Franchise Dealers," which

---

[7] *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

[8] *See Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 104-05 (1984).

purportedly require the dealers to assign their entire wholesale used vehicle portfolios to Manheim's nationwide auction chain. (Cmpt. ¶ 35).  Not surprisingly, Plaintiff provides no details regarding the number of Franchise Dealers subject to these agreements, how much of the "market" is represented by the subject vehicle portfolios, the term of the agreements, or any other basis for concluding that the agreements could possibly have an exclusionary effect.  These pleading deficiencies are glaring considering that courts have generally held that "exclusive dealing arrangements are common and can be procompetitive."  *McWane, Inc. v. Federal Trade Commission*, 783 F.3d 814, 827 (11th Cir. 2015); *see also  Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*, 710 F.2d 752, 773 (11th Cir. 1983) (Exclusive dealing "does not give rise to antitrust liability without proof of actual competitive injury. . . . [S]uch a unilateral exercise of business judgment is free from scrutiny in the absence of proof of competitive harm, or other underlying illegal behavior."); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012) ("Exclusive dealing agreements are often entered into for entirely procompetitive reasons, and generally pose little threat to competition.").  Merely alleging that Defendants purportedly have exclusive dealing arrangements with an unknown number of Franchise Dealers cannot, without more, support a finding that Defendants have engaged in exclusionary conduct.

> **iv.    Plaintiff Has Not Pled the Requisite Concerted Action for a Section One Claim.**

Plaintiff's failure to allege that Defendants engaged in any concerted action with others to violate the antitrust laws provides an independent basis for dismissing its Section 1 claim.  "To establish a Section 1 violation, the plaintiff must first show that there was concerted action between two or more persons — a 'conscious commitment to a common scheme designed to achieve an unlawful objective'—in restraint of trade."  *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1080 (11th Cir. 2016) (*citing Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)).  As a

SQUIRE PATTON BOGGS (US) LLP

matter of law, Defendants—which include Cox Enterprises, Inc. and certain of its wholly-owned subsidiaries (Cmpt. ¶¶ 9-15)—are incapable of conspiring with one another to violate the antitrust laws.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984) (concerted action cannot be solely between a parent corporation and its own subsidiaries); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1233 (10th Cir. 2017) (wholly owned subsidiaries of common parent legally incapable of conspiring to violate the antitrust laws); *Hood v. Tenneco Tex. Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984) (same).

Moreover, Plaintiff's singular allegation that Defendants have created "a collusive arrangement of exclusive agreements with Franchise Dealers to obtain their used wholesale vehicles' inventory" is wholly conclusory and unsupported by any facts.  Plaintiff's failure to allege the existence of concerted action requires dismissal of its Section 1 claim.

### v.    Plaintiff Has Failed to Plead it Suffered Antitrust Injury.

Plaintiff's antitrust claims also should be dismissed because Plaintiff has not pled that it suffered antitrust injury.  A private antitrust plaintiff must plead (and ultimately prove) that it suffered "antitrust injury," which is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  An antitrust injury cannot consist solely of harm done to the plaintiff individually; instead, the plaintiff must allege injury to the competitive market. *See Florida Monument Builders v. All Faiths Memorial Gardens*, 605 F. Supp. 1320, 1323 (S.D. Fla. 1984) ("The law is well settled, however, that a mere showing of injury or loss of income by a plaintiff without a showing of an injury to competition in the market, is not sufficient to state a cause of action for restraint of trade"); *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1375 (S.D. Fla. 2010) ("It is axiomatic that antitrust laws aim to protect competition, not competitors.").

Moreover, the plaintiff has the burden of demonstrating damage to competition with "specific factual allegations." *Spanish Broad. Sys.*, 376 F.3d at 1073. Actual anticompetitive effects include, but are not limited to, reduction of output, increase in price, or deterioration in quality. *Jacobs*, 626 F.3d at 1339.

While Plaintiff pleads why it purportedly has been harmed, it has not properly alleged the relevant injury ***to competition*** as a result of Defendants' conduct.  Plaintiff's alleged injury relates exclusively to the various fees it was required to pay under the terms of the financing arrangement it willingly entered into with Defendant NextGear, as well as purported fees associated with its agreement to participate in Defendant Manheim's auctions.  Such "harm" does not constitute the requisite antitrust injury needed to sustain Plaintiff's antitrust claims. *See, e.g., SouthTrust Corp. v. Plus Sys.*, 913 F. Supp. 1517, 1522 (N.D. Ala. 1995) (harm Plaintiff allegedly suffered under terms of contract does not constitute antitrust injury).   Furthermore, Plaintiff's conclusory allegations that Defendants' conduct has "substantially eliminated…competition," (Cmpt. ¶ 58), led to "substantial price increases," (Cmpt. ¶ 60), and resulted in a substantial decline in the quality of used cars (Cmpt. ¶ 61), are unsupported by any specific facts demonstrating that competition has, in fact, been harmed.  Accordingly, this lack of antitrust injury provides an independent reason why Plaintiff's antitrust claims should be dismissed.[9]

---

[9] Plaintiff's remaining two antitrust claims, under Section 7 of the Clayton Act and the Robinson-Patman Act, are equally deficient and can be summarily addressed.  Section 7 prohibits mergers and acquisitions where "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18.  Plaintiff makes the remarkable and wholly unsupported assertion that Manheim "has acquired the ownership of almost all used vehicle auctions in every state," but otherwise provides no facts about these purported acquisitions, nor the adverse competitive effects resulting from those acquisitions.  Because Plaintiff fails to allege that Defendants have engaged in price discrimination, its claim under the Robinson-Patman Act must similarly be dismissed. *See, e.g., Capital Ford Truck Sales, Inc. v. Ford Motor Co*., 819 F. Supp. 1555, 1568 (N.D. Ga. 1992) ("[I]n order to establish a violation of the Robinson-Patman Act, Plaintiffs must show that [Defendant] discriminated in price between equipment of like grade and quality…").

SQUIRE PATTON BOGGS (US) LLP

**B.      There is No Private Right of Action For Plaintiff's Deceptive and Unfair Trade Practices Claims.**

Counts IV and V of Plaintiff's Complaint allege violations of the Deceptive and Unfair Trade Practice Act, 15 U.S.C. § 45.  That statute, which is Section 5 of the Federal Trade Commission (FTC) Act, does not provide for a private right of action. *Darrisaw v. Pa. Higher Educ. Assistance Agency*, No. CV 316-082, 2016 U.S. Dist. LEXIS 178837, *5 (S.D. Ga. Nov. 29, 2016) (dismissing claims brought under the FTC Act by a private party).  Only the FTC has a right of action under the FTC Act. *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 603 (1926).  Counts IV and V, accordingly, fail as a matter of law and must be dismissed. *See Glover v. Wells Fargo Home Mortg.*, No. 1:12-CV-1445-JEC-LTW, 2012 U.S. Dist. LEXIS 193579, *4-5 (N.D. Ga. May 7, 2012) (dismissing plaintiff's FTC Act claims as a matter of law because the FTC Act does not confer a private right of action).

**C.      Plaintiff Has Not Pled the Elements of a Civil Conspiracy Claim.**

Count II of Plaintiff's complaint purports to allege a civil conspiracy claim against the Defendants.[10]  Under Florida law, the elements of a civil conspiracy claim are: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Fla. Fern Growers Ass'n v. Concerned Citizens*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993).

Plaintiff's civil conspiracy claim fails as a matter of law because Plaintiff fails to plead any of the elements of civil conspiracy or any facts supporting the existence or nature of the purported

---

[10] While nominally labeled "Civil Conspiracy," the allegations in Count II appear directed at Defendants' purported efforts to monopolize the market and do not even include the word "conspiracy" in the charging paragraphs.  As discussed in Section II.A, *supra*, Plaintiff has failed to state a claim for monopolization.  To the extent Plaintiff intended to allege a civil conspiracy in Count II, we address those deficiencies here.

conspiracy.  Particularly fatal to Plaintiff's claim is that any alleged conspiracy (to the extent one could be gleaned from the Complaint's allegations) would only have involved Defendants, which include parent company Cox Enterprises, Inc. and certain of its wholly-owned subsidiaries.  Under Florida law, a claim of civil conspiracy "requires a showing that two or more persons have taken concerted action to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990). Florida law has well established that a corporation cannot conspire with its own agents or wholly owned subsidiaries. *See Bryant Heating and Air Conditioning Corp.*, 597 F. Supp. 1045, 1054 (S.D. Fla. 1984) ("Florida case law holds that members of a single economic unit, such as [defendant corporation and] its wholly owned subsidiary… cannot constitute the requisite combination of 'separate economic groups or forces' necessary to establish the Florida tort of conspiracy"); *see also Exportadora Atlantico, S.A. v. Fresh Quest, Inc*., No. 16-CV-23112-COOKE/TORRES, 2017 U.S. Dist. LEXIS 24832, \*18-19 (S.D. Fla. Feb. 21, 2017); *Microsoft Corp. v. Big Boy Distrib. LLC*, 589 F. Supp. 2d 1308, 1324 (S.D. Fla. 2008). Because Defendants, under Florida law, could not have "conspired" with each other, Plaintiff's civil conspiracy claim should be dismissed.

### D.   Plaintiff Has Failed to State a Claim Against Cox Enterprises, Inc. and Cox Automotive, Inc.

Plaintiff's claims against Cox Enterprises, Inc. and Cox Automotive, Inc. should be dismissed for the independent reason that the Complaint contains no factual allegations regarding either entity, other than to identify their corporate relationship to Defendants Manheim and NextGear.   Neither entity is alleged to have been involved with Defendant Manheim's auctions or the financial arrangement between Plaintiff and Defendant NextGear, and the mere fact that all Defendants are part of a single corporate entity is not, standing alone, sufficient to state a claim against those Cox entities not alleged to be involved with the challenged conduct. *See, e.g., United*

SQUIRE PATTON BOGGS (US) LLP

*States v. Bestfoods*, 524 U.S. 51, 61 (1998) (It is a general principle of corporate law that a parent corporation is not liable for the acts of its subsidiaries.); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322-1323 (S.D. Fla. 2010) (claims against parent company dismissed where complaint contained no allegations tying parent to alleged antitrust conspiracy involving subsidiary).

## CONCLUSION

WHEREFORE, Cox respectfully requests that this Court grant its motion to compel arbitration and stay Plaintiff's claims in accordance with the FAA.   In the alternative, Cox respectfully requests that this Court dismiss the Complaint for failure to state a claim under which relief can be granted.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that on August 21, 2017, counsel for Defendants conferred with counsel for the Plaintiff regarding the relief requested in the motion to compel arbitration.  On August 30, 2017, counsel for the Plaintiff indicated that Plaintiff opposes the motion to compel arbitration.

Dated: August 31, 2017                     Respectfully submitted,

*s/  Kimberly J. Donovan*
Kimberly J. Donovan
(Florida Bar No. 16496)
Email: Kimberly.donovan@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 South Biscayne Blvd., Ste. 4700
Miami, Florida 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001

*s/ Mark J. Botti*
Mark J. Botti, admitted *pro hac vice*
Email: mark.botti@squirepb.com

*s/ Alicia J. Batts*
Alicia J. Batts, admitted *pro hac vice*
Email: alicia.batts@squirepb.com
Christopher H. Gordon, admitted *pro hac vice*
Email: christopher.gordon@squirepb.com
Jessica M. Hoke VanDerMiller*, admitted pro hac vice*
Email: jessica.hoke @squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 31, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*s/ Kimberly J. Donovan*
Kimberly J. Donovan
