IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA

| | |
|---|---|
| CITI CARS, Inc. a Florida corporation ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO.: 1:17-CV-22190-KMM |
| v. ) | |
| ) | |
| COX ENTERPRISES, INC. ) | |
| A Delaware Corporation ) | |
| ) | |
| COX AUTOMOTIVE, INC. ) | |
| A Delaware Corporation ) | |
| ) | |
| MANHEIM AUCTION, LLC ) | |
| A Delaware Limited Liability ) | |
| Corporation ) | |
| ) | |
| NEXTGEAR CAPITAL, INC. ) | |
| A Delaware Corporation, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION OR ALTERNATIVELY, TO DISMISS [D.E. 26]**

Plaintiff, Citi Cars, Inc., A Florida Corporation ("Citi Car"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1, hereby Responds to Defendants' Motion to Compel Arbitration and Alternatively, to Dismiss [D.E. 26], and in response thereto the Plaintiff states the following:

1. Defendants filed their Motion to Compel Arbitration or Alternatively, to Dismiss [D.E. 26] on August 31, 2017.

2. Plaintiff's Response to Defendants' Motion to Compel Arbitration or alternatively, to Dismiss Plaintiff's Complaint [D.E. 1] is currently due on Tuesday, October 6, 2017[D.E. 31].

**INTRODUCTION**

Plaintiff filed its Complaint on June 12, 2017 against Cox Enterprises, Inc., a Delaware Corporation, Cox Automotive, Inc., a Delaware Corporation, Manheim Auction, LLC, a Delaware Limited Liability Corporation, and NextGear Capital, Inc., a Delaware Corporation (fka Manheim Automotive Financial Services or "MAFS"). Plaintiff's Complaint sought relief for violations of the Antitrust Laws (Count I) namely Anti-Trust Act, 15 U.S.C. §§ 1 & 2, §§ 7 & 4 Clayton Act, Robinson-Patman Act, 15 U.S.C. § 13(a); Civil Conspiracy (Count II); Abuse of Monopoly Power (Count III); violations of the Deceptive and Unfair Trade Practices (Count IV); and Deceptive and Unfair Trade Practices in Attempting to Monopolize (Count V).

Beginning in 2006 Plaintiff began purchasing used vehicles from Manheim Auctions, LLC and financing some of these purchases through Manheim Automotive Financial Services, which later became known as Next Gear Capital, Inc. The actions of Defendants acting in concert led to the damages detailed herein and in Plaintiff's Complaint [D.E. 1].

**RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARIBRATION**

Defendants seek to Compel Arbitration of this Case in reliance upon the Demand Promissory Note and Loan Security Agreement (hereinafter the "Agreement") (D.E. 1, Ex. A) entered into between "Borrower" (Plaintiff, Citi Car, Inc., a Florida Corporation) and "Lender" (NextGear Capital, Inc.) (hereinafter "Next Gear").[1]  Next Gear claims that this Case should be compelled into arbitration by the enforcement of Paragraph 22(b) of the Agreement.  A complete reading of the Agreement (particularly paragraphs 22 & 24) does not support Next Gear's assertions.  The relevant provisions of the Agreement are reproduced below.

---

[1] Defendants, Cox Enterprises, Inc., Cox Automotive, Inc., and Manheim Auctions, LLC are not Parties to the Agreement.

"22. DISPUTE RESOLUTION; WAIVER OF CLASS ACTION RIGHTS.

(a) In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims. In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, borrower agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing and advertising by Lender); and (iii) any disputes, claims, or counterclaims that may arise after the termination of this Note and any other Loan document. **Additionally, Borrower, acknowledges that Lender may (but in no event be required to) arbitrate any dispute or claim that it may have against borrower**, with any such arbitration being governed by the provisions of this Section 22. Borrower, at its election, may opt-out of the arbitration provisions set forth in Section 22(a), 22(c), and 22(d) by providing written notice of its election to opt-out no later than thirty (30) days after its effective date, which notice shall be provided to Lender pursuant to Section 15 ("opt-out notice"), provided that such opt-out Notice shall become effective only upon Borrower's receipt of written confirmation from Lender that such opt-out Notice has been received by Lender within the required time period. Borrower acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, borrower shall in all events be subject to the provisions of Section 22(b).

(b) ANY ARBITRATION PROCEEDING UNDER THIS NOTE WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. BORROWER AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF REPRESENTATIVE OR CLASS PROCEEDINGS. BORROWER ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREIDT LINE, THE INTERST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES, ARE UNIQUE TO AND NEGOTIATED BY

BORROWER, AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS.

(c) Any dispute or claim **subject to arbitration pursuant to this Section 22** shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 22 and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000.00, shall be submitted to binding arbitration administrated by JAMS pursuant to its streamlined Arbitration Rules and procedures in effect on the Effective Date (the "JAMS Streamlined Rules"). The disputes and claims subject arbitration pursuant to this Section 22 will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS streamlined Rules, as the case may be. **The Arbitrator shall bound and shall directly enforce the terms of this Note and the other loan documents and may not limit, expand, or otherwise modify any term or provision of this Note or any other Loan Document or any other contract or document. The Arbitrator shall not have the power to award to Borrower any damages that are excluded or that have been waived by Borrower under this Note or any other Loan Document**, and Borrower irrevocably waives any claim that it may have thereto. **The Arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions.** The Arbitrator shall render a written decision within six (6) months after being selected. Any arbitration shall be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon the arbitration award may be entered in any court having jurisdiction over the award or over the applicable Party or its assets.

. . . .

24. **LIMITATION OF LIABILITY. IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS, OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DODUCMENTS (OR ANY ADVANCES MADE BY LENDER HEREUNDER OR THEREUNDER),** EVEN IF SUCH LENDER OR PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHER, **IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT (OR IN CONNECTION WITH ANY ADVANCE BY LENDER HEREUNDER OR THEREUNDER) THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN**

> **FEES ACTUALLY PAID TO LENDER BY BORROWERER UNDER THIS NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THAT FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).[2]**

The Plaintiff asserts that the following provisions of Next Gear's Agreement foreclose their Motion to Compel Arbitration:[3] 1) Lack of mutuality of remedies in that Plaintiff is mandated to arbitrate all disputes or claims, but Defendant, Next Gear, is not required to arbitrate any disputes or claims against Plaintiff but may do so if it so elects to; 2) Limitations imposed on damages recoverable by Plaintiff in Paragraph 22(c) and by reference Paragraph 24; 3) the arbitrator is specifically barred from allowing pre-hearing discovery or depositions; and 4) only two of the four named Defendants are Parties to either the Next Gear Agreement or the Manheim Auctions, LLC online agreement (neither Cox Enterprises, Inc. and Cox Automotive, LLC have agreements requiring arbitration with Plaintiff).[4] If the Defendants' Motion to Compel Arbitration in the Case *sub judice* is granted then the Plaintiff would be barred from recovering treble damages pursuant to 15 U.S.C.A § 15; Plaintiff would not be allowed to conduct pre-hearing discovery or depositions (a necessary element for Plaintiff to prove its antitrust claims); and the parent companies of Next

---

[2] The provisions in "**bold**" are those that Plaintiff asserts make resolution of this matter through arbitration inappropriate.

[3] Defendant, Manheim Auction's "Manheim Terms and Conditions" (D.E. 26, Ex. 2) contain similar terms to the Agreement (D.E. 1, Ex. A), which also forestall the arbitration of Plaintiff's claims *sub judice*. *See* https://publish.manheim.com/en/marketplace-policies/us-policies/manheim-terms-and-conditions.html Additionally, the only information provided to the Court by the Defendants regarding the "Manheim Terms and Conditions" other than attached a purported copy is Defendants' unsubstantiated statement: "All parties attending Manheim Auctions are subject to the Manheim Terms and Conditions, which are attached as Exhibit 2 to this motion." (D.E. 26, p. 5). No information is provided regarding how the Manheim Terms and Conditions are provided to purchasers nor do Defendants detail how purchasers at the auctions are made aware of Manheim Auctions' imposition of such agreement upon auctions participants).

[4] According to Defendants' Corporate Disclosure (D.E. 9) the corporate structure of Defendant is: Cox Enterprises, Inc., which is the ultimate parent corporation of Defendant Cox Automotive, Inc. BDT Capital Partners, LLC is the BDT shareholder representative of the BDT funds, which owns the remaining shares of Cox Automotive, Inc. Manheim Auction, LLC is a wholly-owned subsidiary of Cox Automotive, Inc. NextGear Capital, Inc. is a wholly-owned subsidiary of Manheim Auction, Inc.

Gear and Manheim Auction would not necessarily be parties to such arbitration resulting in inefficiency and duplicative efforts.

Both domestic and international antitrust claims have been held to be arbitrable since the United States Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985). *See Kotam Elecs. v. JBL Consumer Prods.*, 93 F.3d 724, 726-28 (11th Cir. 1996) (discussing *Mitsubishi* and holding that "domestic antitrust claims are therefore arbitrable.")

The Eleventh Circuit Court of Appeals has held a Court's determination of arbitrability encompasses the issue of enforceability of substantive restrictions contained in the arbitration agreement that allegedly conflict with state or federal statutes and public policy. Under this approach, a District Court can either invalidate the entire agreement to arbitrate and hear the merits of the case, or sever the offending provisions and require arbitration under the remainder of the contract. The differences in outcomes on the issue of severability reflect variations among different arbitration agreements. When a party challenges the validity of an arbitration clause because it contains unenforceable remedial restrictions, the Court must first decide whether the restrictions are unenforceable because they defeat the remedial purpose of the state or federal statute. Courts will deny the motion to compel arbitration only where the invalid terms of the arbitration agreement render the entire arbitration clause void. *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F. 3d 1327 (11th Cir. 2005); *see also Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 280 F. App'x 829, 830 (11th Cir. 2008).

The United States Supreme Court has held that a Federal District Court may adjudicate a claim that relates specifically to the making of an agreement to arbitrate. *Buckeye Check Cashing, Inc. v. Cardegna* 546 U.S. 440, 126 S.Ct. 1204, 1208, 163 L. Ed. 2d 1038 (2006); *Prima Paint Corporation v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404, 87 S. Ct. 1801, 18 L. Ed. 2d

6

1270 (1967). Furthermore, in *Chastain v. Robinson-Humphrey Co.*, 957 F. 2d 851, 854-856 (11th Cir. 1992), the Eleventh Circuit held that if the validity of an agreement to arbitrate is at issue, a District Court rather than an arbitration panel must decide if the arbitration provision is enforceable against the parties. Whether the arbitration provision is unconscionable is a question of state law. *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987); *Doctor's Associate's, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

There are two distinct frameworks for determining whether an arbitration clause is unenforceable: "(1) whether the arbitration clause is void as a matter of law because it defeats the remedial purpose of the applicable statute, or (2) whether the arbitration clause is unconscionable." *Fonte v. AT&T Wireless Servs.*, 903 So. 2d 1019 (Fla. 4th DCA 2005). Plaintiff submits that both Next Gear and Manheim Auctions arbitration provisions are void being that they defeat the purpose of the antitrust statute – providing prevailing antitrust plaintiffs treble damages, which are barred by the Agreement herein.

Under Florida law, the party challenging referral to arbitration has the burden of establishing that the arbitration provision at issue is procedurally and substantively unconscionable. *Murphy v. Courtesy Ford, LLC,* 944 So.2d 1131, 1134 (Fla. 3d DCA 2006). This methodology was challenged in *Pendergast v. Sprint Nextel Corp.,* 592 F. 3d 1119, 1143 (11th Cir. 2010) where the 11th Circuit Court of Appeals certified the question to the Florida Supreme Court: "Must Florida courts evaluate both procedural and substantive unconscionability simultaneously in a balancing or sliding scale approach, or may courts consider either procedural or substantive unconscionability independently and conclude their analysis if either one is lacking?"

A determination of procedural unconscionability relates to the manner in which a contract was made and requires consideration of the relative bargaining power of the parties and their ability

7

to understand the relevant terms. *Orkin Exterminating Co. v. Petsch,* 872 So.2d 259, 265 (Fla. 2d DCA 2004). In making a determination of procedural unconscionability Courts consider whether the complaining party had a realistic opportunity to bargain, whether the terms were presented on a "take-it-or leave-it" basis, and whether such party had a reasonable opportunity to understand the contract terms. *Murphy,* 644 So. 2d at 1134.

To determine whether a contract is procedurally unconscionable under Florida law, courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Powertel, Inc., v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999); *Murphy,* 944 So. 2d at 1134. Under Florida law a central question in the procedural unconscionability analysis is whether the consumer has an absence of meaningful choice in whether to accept the contract terms. *Belcher*, 558 So.2d at 1042. In addition, Florida Courts "might find that a contract is procedurally unconscionable if important terms were hidden in a maze of fine print and minimized by deceptive sales practices." *Powertel,* 743 So.2d at 574 (quotation marks omitted). The Agreement with Next Gear in the Case *sub judic*e was entered into as a replacement for the prior agreement with its predecessor entity, Next Gear had superior bargaining power than Plaintiff, the terms of the Agreement were not subject to negotiation (other than the alleged opt-out provision in Paragraph 22(a), there is no signature required or initials related to the arbitration provisions Paragraph 22 (D.E. 1, Ex. A), and the Plaintiff had no realistic opportunity to understand the specific terms of the Agreement. In regards to the Manheim Automotive Agreement (*see* Footnote 3 *supra*), there is absolutely no evidence submitted by the Defendants that Plaintiff ever saw, reviewed, or

acknowledged such document.

Substantive unconscionability relates to the agreement itself and requires a showing that the terms of the agreement or provision are unreasonable and unfair. *Powertel,* 743 So. 2d at 574. In determining whether an agreement or provision is substantively unconscionable Courts consider whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes. *Palm Beach Motor Cars Limited, Inc. v. Jeffries,* 885 So. 2d 990, 992 (Fla. 4th DCA 2004).

In *Palm Beach Motor Cars Limited, Inc. v. Jeffries,* 885 So. 2d 990, 991 (Fla. 4th DCA 2004), the plaintiff signed an automobile purchase agreement that contained an arbitration clause on the back page. The arbitration clause included a blank space for the purchasers to initial. Despite fine print on the front page of the agreement referring to terms on the back page of the agreement, the plaintiff was not aware the agreement included a back page and did not initial the arbitration provision. *Id.* Based on the small size of this print, the lack of the plaintiff's initials under the arbitration provision, and the customary practice of the defendant's employees to not draw customers' attention to the back page of the agreement, the Florida Fourth District Court of Appeal held that the provision was procedurally unconscionable, finding that the defendant had actively discouraged the plaintiff from understanding the contract terms. The Manheim Automotive agreement to the best of Plaintiff's knowledge has never been signed, and the Defendants nakedly assert that: "All parties attending Manheim auctions are subject to the Manheim Terms and Conditions" without adducing and corroborating evidence in support of such a claim. [D.E. 26, p. 5].

In this Case, the Agreements of both Next Gear and Manheim Auctions limit Plaintiff's

remedies (namely treble damages under 15 U.S.C.A § 15, and the barring of discovery or depositions); significant costs will be imposed upon Plaintiff in the arbitration of claims contained in the Complaint [D.E. 1]; and there is no mutuality of obligations to arbitrate (See Paragraph 22(a): "Additionally, Borrower, acknowledges that Lender may (but in no event be required to) arbitrate any dispute or claim that it may have against borrower."). Therefore, Plaintiff attests that Defendants, Next Gear and Manheim Auctions' arbitration provisions are unenforceable as a matter of law because they defeat the remedial purposes of the antitrust laws, and they both are both procedurally and substantively unconscionable.

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

### A. Antitrust Claims.

Plaintiff sufficiently pled substantial antitrust violations by Defendants. Paragraph 3 of the Plaintiff's Complaint states:

> Defendants, by combining and controlling their various corporate subsidiaries, not only control the used vehicles inventory throughout the United states, but also through price-fixing, in various forms, have substantially increased the wholesale and retail "pricing" of used vehicles, for both licensed dealers and consumers as the ultimate end users, lowered the quality of used vehicles in the flow of interstate commerce, as well as by market allocation and by inventory allocation to their auctions, by creating exclusive collusive contractual agreements with independent and franchise automotive dealerships, which serves to eliminate competition for the purchase of used vehicles, limiting or removing the ability of Dealers to purchase used cars traded into automotive dealerships so that such vehicles can only be purchased at Defendants' auctions, which allows Defendants to fix prices and impose substantial fees upon dealers for vehicles purchased at Defendants' auctions, causing higher wholesale prices and lower quality for consumers.

A monopolization claim under Section 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Morris Communications Corp. v. PGA*

*Tour, Inc.*, 364 F. 3d 1288, 1293-94 (11th Cir. 2004) (*citing United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). Plaintiff's Complaint clearly pleads Defendants' monopoly power in the wholesale used car market and that Defendants have willfully acquired said power [D.E. 1 at §§ 17-20].

Plaintiff has plead a relevant market by stating: "The Plaintiff submits that the Defendants have formulated a 'single entity outlet' that represents at least an eighty-six (86%) percent market share (hereinafter "Market Power") within the definition of the HHI (Herfindal-Hirschman Index) to control the United States market for the resale of wholesale used vehicles (hereinafter the "Market"), and resale wholesale price and price-maintenance of the wholesale used vehicles in the market, plus the market allocation of used vehicles, encompassing the United States as well Europe and Asia, as a global used cars' monopoly."[4]

Plaintiff pleads Defendants' exclusionary conduct by demonstrating that Defendants have compelled wholesale purchasers of used cars to exclusively use the Defendants' auctions and financing by acquiring the majority of used automobiles from franchise dealers [D.E. 1 ¶¶ 17-20].

Plaintiff has suffered antitrust injury as detailed in Paragraphs 67-68 of Plaintiff's complaint [D.E. 1]. An antitrust complaint may be deemed sufficient where it merely alleges a series of acts that the plaintiff contends constitute violations of both the Sherman and Clayton Acts and that were designed to drive the plaintiff out of business. *Michigan Gas & Elec. Co. v. American Elec. Power Co.*, 41 F.R.D. 462, 10 Fed. R. Serv. 2d 80 (S.D. N.Y. 1966). Likewise, claims of conspiracy and monopoly under the Sherman Act need not be separately stated where consideration of the alleged conspiracy to monopolize cannot practically be isolated from alleged monopolization through conspiracy. *Utah Gas Pipelines Corp. v. El Paso Natural Gas Co.*, 233

---

[4] The Herfindal Hirschman Index is a highly-accepted measure of market concentration. United States v. Cox Enters., 2016 U.S. Dist. LEXIS 31596, *1, 2016-1 Trade Reg. Rep. (CCH) P79,479 (D.D.C. Jan. 21, 2016).

F. Supp. 955 (D. Utah 1964).

### B. Unfair Trade Practices Claims.

Plaintiff concedes Defendants' argument in regards to Counts IV and V.

### C. Civil Conspiracy.

Plaintiff's Complaint Count II satisfies the elements of civil conspiracy [D.E. 1, ¶¶ 69-75]. The elements of civil conspiracy are 1) conspiracy between two or more parties; 2) to do an unlawful act or to do a lawful act by unlawful means; 3) the execution of some overt action in pursuance of the conspiracy; and 4) Plaintiff suffered damages as a result of the act performed through the conspiracy. *Alhassid v. Bank of America, N.A.,* 60 F. Supp. 3d 1302 (S.D. Fla. Nov. 17, 2014).

### D. Failure to State a Cause of Action Against Cox Enterprises, Inc. and Cox Automotive, Inc.

Plaintiff maintains that Count II of the Plaintiff's Complaint [D.E. 1, ¶¶ 69-75] clearly alleges that the Defendants as a combined entity [See D.E. 9 Defendants' Corporate Disclosure], and that the Defendants have acted and conspired to violate Sections 1 & 2 of the Sherman Act (15 U.S.C. § 1, *et seq.*), 15 U.S.C. § 4, Section 3 of the Clayton Act (15.U.S.C.A. § 14), 28 U.S.C. § 1331, and/or Fla. Stat § 542.22

### CONLCUSION

WHEREFORE, Plaintiff respectfully requests that the Court enters an Order Denying Defendants' Motion to Compel Arbitration, or alternatively, to Dismiss [D.E. 26]. Should this Court deem that Plaintiff's Complaint should be dismissed, Plaintiff would request the opportunity to amend such pursuant to Fed. R. Civ. P. R. 15(a)(2).

Dated: September 29, 2017

Respectfully Submitted,

        /s/ Martin G. McCarthy
        Martin G. McCarthy, Esquire, Florida Bar No.: 0149896
        Gendler, McCarthy, & Yersel, PLLC
        2151 S. Lejeune Road, Ste. 306
        Coral Gables, FL 33134
        Telephone (305) 444-1533 / Facsimile (866) 676-4671
        Primary Service Email: McCarthy@Miami-Law.com
        Additional Service Email 1: Eyersel@Miami-Law.com

### **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the forgoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ Martin G. McCarthy
        Martin G. McCarthy, Esq.

**SERVICE LIST**

Via transmission of Notices of Electronic Filing and email service to:

Kimberly J. Donovan (Florida Bar No. 16496)
Email: Kimberly.donovan@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 South Biscayne Blvd., Ste. 4700
Miami, Florida 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001

Mark J. Botti, admitted *pro hac vice*
Email: mark.botti@squirepb.com
Alicia J. Batts, admitted *pro hac vice*
Email:  alicia.batts@squirepb.com Christopher H. Gordon, admitted *pro hac vice* Email: christopher.gordon@squirepb.com Jessica M. Hoke VanDerMiller*,* admitted *pro hac vice*
Email: jessica.hoke @squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW Washington, DC 20037
Telephone: (202) 457-6000 / Facsimile:  (202) 457-6315

*Attorneys for the Defendants*