## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-22190-KMM

Citi Cars, Inc.,

      Plaintiff,

v.

Cox Enterprises, Inc.
Cox Automotive, Inc.,
Manaheim Auctions, LLC,
Nextgear Capital, Inc.,

      Defendants.

_____/

## <u>ORDER GRANTING MOTION TO COMPEL ARBITRATION</u>

THIS CAUSE came before the Court upon Defendants Cox Enterprises, Inc., Cox Automotive Inc., Manheim Auction, LLC, and Next Gear Capital, Inc.'s Motion to Compel Arbitration, or Alternatively, to Dismiss (ECF No. 26) (the "Motion"). Plaintiff has filed a Response in Opposition (the "Opposition") (ECF No. 32), and Defendants have filed a Reply in Support (the "Reply") (ECF No. 33). Accordingly, the Motion is now ripe for review. For the reasons that follow, the Motion is GRANTED.

## I.      BACKGROUND

Defendant Cox Enterprise, Inc. ("Cox Enterprise") is a conglomerate based in Atlanta, Georgia. Compl. (ECF No. 1) ¶ 13. Each of the other Defendants—Cox Automotive, Inc. ("Cox Automotive"), Manheim Auctions, LLC ("Manheim"), and Next Gear Capital, Inc. ("Next Gear")—are subsidiaries of Cox Enterprise. *Id.*; *see also id.* ¶¶ 9–14.[1]

_____

[1] Plaintiff has inconsistently referred to the names of entities in the Complaint. As a result, the Defendants' names listed in the case caption do not match the Defendants' names referenced throughout the Complaint. *Compare* Compl. at 1 *with id.* ¶¶ 8–15; *see also generally* Compl. The Court assumes all references to "Manheim Auction Government Services, LLC," "Manheim Auto Auction, Inc.," and "Manheim Auto Auctions, Inc." refer to Defendant Manheim. The Court also assumes all references to "Cox Automotive, Inc." and "Cox Automotive Services" refer to Defendant Cox Automotive.

Beginning in April 2006, Plaintiff Citi Cars, Inc. began purchasing used wholesale vehicles from Manheim by attending automobile auctions ("Manheim Auctions"). *See id.* ¶ 39. Plaintiff has purchased a total of 1,880 vehicles at Manheim Auctions. *Id.* ¶ 30. The Manheim Auctions are conducted pursuant to Terms and Conditions (hereinafter, the "Manheim Agreement"). *See* Exhibit 2 to Mot. (ECF No. 26-2).[2] According to the Manheim Agreement, a person or entity agrees to abide by the terms of the Manheim Agreement by attending any of the Manheim Auctions or using any of Manheim's services. *See id.* at 2. The Manheim Agreement also provides that "[t]hese terms and conditions shall benefit Manheim Remarketing, Inc. and its various subsidiaries and affiliates, including the various Manheim auto auctions, Cox Automotive, Inc., and others . . . ." *Id.* at 2.

In relevant part, the Manheim Agreement contains an arbitration clause (hereinafter, the "Manheim Arbitration Clause"), which provides as follows:

> (a) YOU AGREE TO ARBITRATE ANY DISPUTE OR CLAIM THAT YOU MAY HAVE WITH MANHEIM THAT ARISES OUT OF OR RELATES IN ANY WAY TO THESE TERMS AND CONDITIONS; ANY PURCHASE, SALE, OR OTHER AUCTION OR CREDIT TRANSACTION WITH MANHEIM; YOUR USE OF ANY MANHEIM WEBSITE, ONLINE PORTAL OR ANY MANHEIM PRODUCT OR SERVICE; OR ANY OTHER AGREEMENT BETWEEN YOU AND MANHEIM. ARBITRATION CONDUCTED HEREUNDER SHALL BE FINAL AND BINDING. THIS ARBITRATION PROVISION MEANS THAT YOUR CLAIMS AGAINST MANHEIM WILL BE RESOLVED THROUGH ARBITRATION RATHER THAN LITIGATION IN COURT. YOU ACKNOWLEDGE THAT MANHEIM MAY (BUT SHALL NOT BE REQUIRED TO) SUBMIT TO ARBITRATION ANY DISPUTE OR CLAIM THAT IT MAY HAVE AGAINST YOU WITH ANY SUCH

---

[2] Defendant argues that the Manheim Agreement applied to the Manheim Auctions Plaintiff attended. The Court considers the document because Plaintiff does not deny this contention or dispute the contents of the document. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (holding that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute") (citation omitted); *Ramsey v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:11-CV-3862-JOF-JSA, 2013 WL 1222492, at *29 (N.D. Ga. Jan. 30, 2013), *aff'd*, 543 F. App'x 966 (11th Cir. 2013) ("When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned.").

ARBITRATION BEING GOVERNED BY THE PROVISIONS OF THIS
SECTION 26.

*See id.* at 10–11. The Manheim Arbitration Clause also contains the following opt-out provision:

"ABILITY TO OPT OUT: YOU MAY OPT OUT OF THIS ARBITRATION AGREEMENT (SECTION

26 ONLY) FOR ANY FUTURE BUSINESS WITH MANHEIM AND DOING SO WILL NOT IN ANY

WAY PREJUDICE OR AFFECT YOUR DEALINGS WITH MANHEIM." *Id.* at 10–11.

For the first two years, Plaintiff made purchases at Manheim Auctions using cash. *Id.* ¶ 40. Upon

Manheim's recommendation, Plaintiff applied for a line of credit with Next Gear (under its former name

Manheim Floor Plan Financial Services) in order to finance inventory purchases. *Id.* ¶¶ 42–43. Plaintiff

entered into a financing arrangement with Next Gear ("Next Gear Agreement") and was approved for a

$250,000 line of credit, which was later increased to $500,000. *Id.* at ¶¶ 42, 44. Section 22 of the

addendum to the Next Gear Agreement contains an arbitration clause (hereinafter, the "Next Gear

Arbitration Clause"), which in relevant part, provides as follows:

> (a) . . . . In the unlikely event that Lender is unable to resolve a dispute or
> claim that Borrower may have, borrower agrees to arbitrate any such
> dispute or claim. This agreement to arbitrate is intended to be broadly
> interpreted, and includes (i) all disputes, claims and counterclaims arising
> out of or relating to this Note or any other Loan Document or any aspect of
> Borrower's relationship with Lender, whether based in contract, tort,
> statute, fraud, misrepresentation or any other legal theory; (ii) all disputes,
> claims and counterclaims that may have arisen before this Note or any prior
> contract or agreement between Borrower and Lender (including all disputes,
> claims and counterclaims relating to any marketing and advertising by
> Lender); and (iii) any disputes, claims, or counterclaims that may arise after
> the termination of this Note and any other Loan document. Additionally,
> Borrower, acknowledges that Lender may (but in no event be required to)
> arbitrate any dispute or claim that it may have against borrower, with any
> such arbitration being governed by the provisions of this Section 22. . . .
>
> (c) Any dispute or claim subject to arbitration pursuant to this Section 22
> shall be submitted to binding arbitration administered by the Judicial
> Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive
> Arbitration Rules and Procedures as then in effect (the "JAMS
> Comprehensive Rules"); provided, however, that any dispute or claim that
> is subject to arbitration pursuant to this Section 22 and that involves
> disputes or claims where the aggregate amount reasonably in dispute or

controversy is less than $100,000.00, shall be submitted to binding arbitration administrated by JAMS pursuant to its streamlined Arbitration Rules and procedures in effect on the Effective Date (the "JAMS Streamlined Rules"). The disputes and claims subject arbitration pursuant to this Section 22 will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS streamlined Rules, as the case may be. The Arbitrator shall bound and shall directly enforce the terms of this Note and the other loan documents and may not limit, expand, or otherwise modify any term or provision of this Note or any other Loan Document or any other contract or document. The Arbitrator shall not have the power to award to Borrower any damages that are excluded or that have been waived by Borrower under this Note or any other Loan Document, and Borrower irrevocably waives any claim that it may have thereto. The Arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The Arbitrator shall render a written decision within six (6) months after being selected. Any arbitration shall be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon the arbitration award may be entered in any court having jurisdiction over the award or over the applicable Party or its assets.

*See* Exhibit A to Compl. (ECF No. 1-2) at 13–14. The Next Gear Arbitration Clause also contains the

following opt-out provision:

Borrower, at its election, may opt-out of the arbitration provisions set forth in Section 22(a), 22(c), and 22(d) by providing written notice of its election to opt-out no later than thirty (30) days after its effective date, which notice shall be provided to Lender pursuant to Section 15 ("opt-out notice"), provided that such opt-out Notice shall become effective only upon Borrower's receipt of written confirmation from Lender that such opt-out Notice has been received by Lender within the required time period. Borrower acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, borrower shall in all events be subject to the provisions of Section 22(b). . . .

*Id.* at 13. Section 24 of the addendum to the Next Gear Agreement also contains the following limitation

of liability clause (hereinafter, the "Limitation of Liability Clause"):

LIMITATION OF LIABILITY. IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS, OR OTHER

> ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENTS (OR ANY ADVANCES MADE BY LENDER HEREUNDER OR THEREUNDER), EVEN IF SUCH LENDER OR PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT (OR IN CONNECTION WITH ANY ADVANCE BY LENDER HEREUNDER OR THEREUNDER) THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWERER UNDER THIS NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THAT FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

*Id.* at 14. Finally, Section 19 of the addendum to the Next Gear Agreement contains the following severability clause:

> SEVERABILITY. Any provision of this Note or any other Loan Document that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Note and the other Loan Documents or affecting the validity or enforceability of any provision of this Note or any other Loan Document in any other jurisdiction.

*Id.* at 13.

Plaintiff attempted to purchase used wholesale vehicles directly from franchise dealers, but was informed that all such vehicles would only be shipped for sale at Manheim Auctions. *Id.* ¶ 45. Plaintiff avers that Plaintiff would have saved an average of $3,000 per vehicle purchased had Plaintiff been able to purchase directly from franchise dealers. *Id.* ¶ 46. This cost difference is due to the fact that Manheim Auctions utilize Manheim Market Report Pricing ("MMR") for setting prices, which is $2,000 to $3,000 higher than the "Black Book" value. *Id.* ¶ 46; *see also id.* ¶¶ 18–19. Plaintiff alleges that, but-for Defendants, franchise dealers would have sold used vehicles to Plaintiff and appraised such vehicles using the Black Book value. *Id.* ¶ 46.

For eight years, Plaintiff continued making inventory purchases from Manheim Auctions and financed such inventory purchases with Next Gear. *Id.* ¶¶ 47–48. In November 2016, Plaintiff ceased making payments under the arrangement with Next Gear and, in December 2016, filed for bankruptcy protection. *Id.* at ¶¶ 48–49. Shortly after Plaintiff filed for bankruptcy, Defendants suspended Plaintiff's line of credit. *Id.* at ¶ 54.

Against this backdrop, Plaintiff lodges five claims against Defendants. Specifically, in Count I, Plaintiff claims that Defendants have entered into a combination or conspiracy to unreasonably restrain trade in violation of 15 U.S.C. §§ 1, 2, 4, 7, 13(a). In Count II, Plaintiff alleges that Defendants conspired to force Plaintiff into Chapter 11 Bankruptcy "because of their control of the wholesale used car market, the financing thereof, and their unfair and deceptive trade practices in administering" the Manheim Auctions. *Id.* ¶ 70. In Count III, Plaintiff alleges that Defendants used their purported monopoly power to force Plaintiff into bankruptcy and to "engage[] in various anticompetitive bad acts . . . ." *Id.* ¶¶ 77–79. In Counts IV and V, Plaintiff alleges that Defendants engaged in deceptive and unfair trade practices based on the same conduct as in the prior counts.

Defendants move to compel arbitration under the Next Gear Arbitration Clause and the Manheim Arbitration Clause, and move, in the alternative, to dismiss the Complaint for failure to state a claim. Plaintiff opposes both arbitration and dismissal, but explicitly concedes Defendants' arguments regarding dismissal of Counts IV and V. *See* Opp. at 12.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") "places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as

6

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Parnell*, 804 F.3d at 1146 ("Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" (citation omitted)). Claims are subject to arbitration where they fall within the scope of a valid and enforceable arbitration agreement. *See, e.g., Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986).

"The party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1324 (S.D. Fla. 2004). "This burden is not unlike that of a party seeking summary judgment" because "the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention." *Id.*; *see also Bertram v. Beneficial Consumer Discount Co.*, 286 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (in the context of a motion to compel arbitration or to stay litigation pending arbitration, "the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

"[U]pon any issue referable to arbitration under an agreement in writing for such arbitration," and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## III.   DISCUSSION

Plaintiff argues that arbitration is inappropriate here for three reasons. First, Plaintiff argues that the Manheim Arbitration Clause and the Next Gear Arbitration Clause (together, the "Arbitration

Clauses") are unconscionable because: (1) the Arbitration Clauses do not mutually require Defendants to arbitrate any disputes that they may have against Plaintiff; (2) the Limitation of Liability Clause imposes a limit on damages recoverable by Plaintiff; and (3) the arbitrator is specifically barred from allowing pre-hearing discovery or depositions. Second, Plaintiff argues the Arbitration Clauses are void because they defeat the remedial purpose of anti-trust laws. Third, Plaintiff argues that Cox Enterprises and Cox Automotive may not invoke the Arbitration Clauses because they are not signatories to either agreement. Before addressing Plaintiff's arguments, the Court first addresses the threshold issues of whether the Parties have agreed to arbitrate the claims in the Complaint and whether the Arbitration Clauses are enforceable under the FAA. *See, e.g.*, *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1324 (S.D. Fla. 2016).

A.  Whether the Claims Fall Within the Scope of the Arbitration Clauses

Under the FAA, "parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Plaintiff does not argue that the claims in the Complaint fall outside the scopes of the Arbitration Clauses. Nor could Plaintiff do so because both clauses contain broad and comprehensive scopes. The Next Gear Arbitration Clause provides that "[t]his agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." *See* Exhibit A to Compl. (ECF No. 1-2) at 13. The Manheim Arbitration Clause is similarly broad, encompassing "any dispute or claim" that Plaintiff may have with Manheim that "arises out of or relates in any way" to the Manheim

Agreement, to "any purchase, sale or other auction or credit transaction with Manheim," to "any Manheim product or service," or to "any other agreement between you and Manheim." *See* Exhibit 2 to Mot. (ECF No. 26-2) at 10–11.

Such broad clauses "evince[] a clear intent to cover more than just those matters set forth in the contract." *See Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010); *see also id.* (noting that there is "nothing unusual" about an arbitration clause that "requires arbitration of all disputes between the parties to the agreement."). Because "the presumption in favor of arbitration applies to the resolution of scope questions," *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir. 2006)—and because Plaintiff does not challenge the scope of the clauses—the Court finds that the Next Gear Arbitration Clause and the Manheim Arbitration Clause are applicable to the claims alleged in the Complaint.

B.  Whether the Arbitration Clauses Are Enforceable Under the FAA

"To enforce an arbitration agreement under the FAA, the Court must conduct a two-pronged inquiry: first, the Court must determine whether there was an arbitration agreement in writing; and second, if so, the Court must ascertain whether the agreement is a part of a transaction involving interstate commerce."[3] *Herrera*, 154 F. Supp. 3d at 1324; *see also* 9 U.S.C. § 2 (the FAA applies to a "written provision in . . . a contract evidencing a transaction involving commerce"). Defendants bear the burden of proving both prongs. *Herrera*, 154 F. Supp. 3d at 1324; *see also Williams v. Eddie Acardi Motor Co.,* No. 07–cv–782, 2008 WL 686222, at *7 (M.D. Fla. Mar. 10, 2008) ("Defendant's burden is to establish there is a valid written agreement to arbitrate.").

---

[3] The term "commerce" as used in Section 2 of the FAA means interstate commerce. *See* 9 U.S.C. § 1 ("'[C]ommerce', as herein defined, means commerce among the several States[.]").

Plaintiff does not dispute the existence of the Next Gear Agreement, which is the written contract containing the Next Gear Arbitration Clause.[4] Plaintiff also does not contest the fact that it executed this agreement. "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Chastain*, 957 F.2d at 854; *see e.g.*, *Scone Invs., L.P. v. Am. Third Mkt. Corp.,* 992 F.Supp. 378, 381 (S.D.N.Y. 1998) (finding that the movants had "satisfied their initial burden of demonstrating a written agreement obligating both plaintiffs to arbitrate by producing a copy of the customer agreement which includes an arbitration clause and which was purportedly signed by [the other party]"). Because it is undisputed that Plaintiff signed the Next Gear Agreement, the burden then shifts to Plaintiff to show that no valid contract existed. To meet that burden Plaintiff must "unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." *Magnolia Capital Advisors v. Bear Stearns & Co.,* 272 Fed. Appx. 782, 785 (11th Cir. 2008) (citing *Chastain,* 957 F.2d at 854)). Because Plaintiff does not make such a denial, the Court finds that the Next Gear Arbitration Clause constitutes a written agreement to arbitrate.

Plaintiff likewise does not contest the existence of the Manheim Terms and Conditions, but argues that Plaintiff never signed the Terms and Conditions and that there is no support for the proposition that the Manheim Auctions are subject to the Terms and Conditions. *See* Opp. at 9.[5] The Court rejects Plaintiff's arguments. "[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). In *Caley*, the Eleventh Circuit held that the plaintiff-employee had accepted a dispute resolution policy containing an arbitration clause by continuing employment with the employer-defendant

---

[4] A denial would be implausible in any event as the Next Gear Agreement is attached to the Complaint.

[5] Curiously, Plaintiff makes these arguments in the context of its unconscionability argument; and does not raise any arguments specifically concerning the formation of an agreement surrounding the Manheim Agreement. *See* Opp. at 9.

because the policy itself set forth the manner of acceptance as continued employment. *Id.* at 1375. Similarly, the Manheim Agreement sets forth that a person or entity agrees to abide by the terms and conditions of the Manheim Agreement by attending any of the Manheim Auctions or using any of Manheim's services. *See* Exhibit 2 to Mot. (ECF No. 26-2) at 2. Moreover, Plaintiff does not assert that it did not receive the Terms and Conditions; and Plaintiff alleges that it attended Manheim Auctions for over eight years.[6] Additionally, Plaintiff does not "unequivocally deny that an agreement to arbitrate was reached" much less "offer some evidence to substantiate the denial." *Magnolia Capital Advisors,* 272 Fed. Appx. at 785. Because Plaintiff does not make such a denial, the Court finds that the Manheim Agreement constitutes a written agreement to arbitrate.

The Court also finds that both agreements evidence a transaction involving interstate commerce, as required by 9 U.S.C. § 2. The Supreme Court has interpreted the phrase "involving commerce" broadly. *See Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995). "[I]nvolving commerce requires only that the transaction in fact involv[e] interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281 (alterations in original) (internal quotation marks and citations omitted). The Parties do not contest that the transactions in this case involve interstate commerce. Moreover, the transactions here—purchasing used vehicles at auction and receiving financing in order to do so—implicate interstate commerce on the face of the Complaint. For example, Plaintiff alleges that Manheim acquired the ownership of almost all used vehicles in every state in the United States and manages the distribution and allocation of used vehicles through Manheim Auctions

---

[6] The Court notes that the Manheim Agreement attached to the Motion appears to have been updated on September 17, 2015. *See id.* at 2. However, Plaintiff has not disputed that the terms of the Manheim Agreement applied during the relevant period, much less fulfilled its "affirmative duty" of "coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims*, 336 F. Supp. 2d at 1314.

nationwide "to manipulate pricing and availability across the United States in the flow of interstate commerce . . . ." *See* Compl. ¶ 19.

Accordingly, the Court finds that both the Next Gear Agreement and the Manheim Agreement constitute written agreements involving interstate commerce. Thus, the Arbitration Clauses within each agreement are enforceable under Section 2 of the FAA.

C.   Whether the Arbitration Clauses are Unconscionable

The last phrase of Section 2 of the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011) (quoting 9 U.S.C. § 2). That provision allows arbitration agreements "to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (internal quotation marks omitted).

As noted above, Plaintiff argues the Arbitration Clauses are unconscionable because: (1) the Arbitration Clauses do not reciprocally require Defendants to arbitrate any disputes they may have against Plaintiff; (2) the Limitation of Liability Clause imposes a limit on damages recoverable by Plaintiff; and (3) the arbitrator is specifically barred from allowing pre-hearing discovery or depositions. Opp. at 5–10. The Supreme Court has "repeatedly identified unconscionability as one of the general principles of contract law that . . . may be applied to arbitration agreements under § 2." *Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269, 1278 (11th Cir. 2012). State law governs whether an arbitration clause is unconscionable. *See Bess v. Check Express*, 294 F.3d 1298, 1306–07 (11th Cir. 2002).

Under Florida law,[7] a party challenging an arbitration agreement based on unconscionability must establish that the agreement is "both procedurally and substantively unconscionable." *See Basulto v.*

---

[7] The Parties' arguments are both premised on the application of Florida's unconscionability doctrine. *See* Opp. at 7; Reply at 2–5. Thus, the Parties have proceeded under the assumption that Florida law governs the enforceability of the Arbitration Clauses. "If the parties litigate the case under the assumption that a certain law applies, [courts] will assume that that law applies." *Bahamas Sales Assoc., LLC v. Byers*, 701

*Hialeah Auto.*, 141 So.3d 1145, 1157–58 (Fla. 2014); *see also Lamour v. Uber Techs., Inc.*, No. 1:16-CIV-21449, 2017 WL 878712, at *14 (S.D. Fla. Mar. 1, 2017) (Under Florida law "[b]efore a court may hold a contract unconscionable, it must find that it is both procedurally and substantively unconscionable."). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contractual terms which are unreasonably favorable to the other party." *Basulto*, 141 So. 3d at 1157.

In support of its procedural unconscionability argument, Plaintiff relies on case law regarding consumers entering into contracts with corporations. However, Plaintiff is not a consumer, but a corporate business entity that has allegedly entered into multiple commercial and financial transactions with Defendants since 2006. *See, e.g.*, Compl. ¶¶ 39, 48. "[I]f two sophisticated commercial enterprises or businesses negotiate a contract where both sides are on equal footing, absent some high degree of procedural unconscionability (such as a party 'hiding the ball'), the chance that the terms of the contract are unduly oppressive is lessened given the circumstances of the contract formation." *Basulto*, 141 So. 3d at 1160–61. "Because courts distinguish between an average consumer and more sophisticated parties when determining whether an arbitration agreement should be enforced," the Court views Plaintiff's arguments "with some skepticism." *Mirabile v. Blue Cross & Blue Shield of Kan. City (In re Managed Care Litig.)*, 2009 U.S. Dist. LEXIS 133564, *65 (S.D. Fla. 2009). Thus, "absent clear and convincing evidence that the agreements are unconscionable," the Court is "compelled to enforce them." *Id.*

To the extent Plaintiff argues that there was a disparity in bargaining power between Plaintiff and Defendants, this alone "is not a sufficient reason to hold that arbitration agreements [are unenforceable]." *Spurgeon v. Marriott Int'l, Inc.*, No. 16-24612-CIV, 2017 WL 896301, at *6 (S.D. Fla. Mar. 7, 2017)

---

F.3d 1335, 1342 (11th Cir. 2012); *see also Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 n. 1 (11th Cir.1983) ("[B]ecause the parties rely upon Florida law, we presume its applicability" even though it is "at least arguable that New York law does govern the resolution of this case . . . ."); *cf. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments.").

(alteration in original) (citation omitted). In any case, Plaintiff has failed to establish that its "bargaining power is unequal to Defendants', or that [it] had no choice but to sign the agreement." *Mirabile*, 2009 U.S. Dist. LEXIS 133564 at *71.

Plaintiff also argues that there is no evidence that it saw, reviewed, or read the Manheim Agreement. However, Plaintiff has not fulfilled its "affirmative duty" of "coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims*, 336 F. Supp. 2d at 1314; *Mirabile*, 2009 U.S. Dist. LEXIS 133564 at *65 ("[A]bsent clear and convincing evidence that the agreements are unconscionable (and in light of the Court's preference to enforce valid arbitration agreements), [courts] are compelled to enforce them."); *see also Lamour*, 2017 WL 878712 at *14 ("Despite having the burden of proving that the Arbitration Provision is unconscionable, Plaintiff offered no record evidence in support [of] his argument that the Arbitration Provision is procedurally unconscionable."). Specifically, Plaintiff has not established (or even alleged) that it never had an opportunity to read these conditions over its many years of doing business with Manheim. Moreover, a plaintiff may accept terms and conditions of a contract via action—even where that plaintiff has not actually read those provisions. *See Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012).

Importantly, both arbitration provisions at issue contain "opt-out" clauses specifically allowing Plaintiff to conduct business with Manheim and Next Gear without consenting to arbitration. In all capital letters, the Manheim Arbitration clause contains the following opt-out provision: "ABILITY TO OPT OUT: YOU MAY OPT OUT OF THIS ARBITRATION AGREEMENT (SECTION 26 ONLY) FOR ANY FUTURE BUSINESS WITH MANHEIM AND DOING SO WILL NOT IN ANY WAY PREJUDICE OR AFFECT YOUR DEALINGS WITH MANHEIM." Exhibit 2 to Mot. (ECF No. 26-2) at 10–11. The Next Gear Arbitration Clause also contains the following opt-out provision: "Borrower, at its election, may opt-out of the arbitration provisions set forth in Section 22(a), 22(c), and 22(d) by providing

written notice of its election to opt-out no later than thirty (30) days after its effective date . . . ." *See* Exhibit A to Compl. (ECF No. 1-2) at 13.

These opt-out provisions obviate Plaintiff's procedural unconscionability argument. *See, e.g.*, *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224 (M.D. Fla. 2013) ("The caveat that the consumer may opt-out of arbitration within thirty days of signing the agreement obviates any argument of procedural unconscionability."); *Lamour*, 2017 WL 878712 at *14 ("[B]ecause the Arbitration Provision was freely accepted by Plaintiff when he had sufficient time to consider it and the unfettered right to reject it, there can be no finding of procedural unconscionability and no finding of unconscionability under Florida law."). Plaintiff has not disputed the existence of these clauses or come forward by way of "affidavit or allegation of fact to show" that it lacked an opportunity to consider these opt-out clauses or proffered any other reason "why the court should not compel arbitration," *Sims*, 336 F. Supp. 2d at 1314.

Thus, Plaintiff has failed to show that the Arbitration Clauses at issue are procedurally unconscionable. "Because both procedural and substantive unconscionability must be present to find an arbitration agreement unenforceable," Plaintiff's "failure to establish procedural unconscionability forecloses [its] unconscionability argument." *Spurgeon*, 2017 WL 896301 at *6.

D.   Whether the Arbitration Clauses Are Void Because they Contravene Public Policy

Plaintiff argues that the Arbitration Clauses are void because they defeat the remedial purpose of anti-trust laws. *See* Opp. at 10. Although it is unclear what specific provisions of each agreement Plaintiff contends defeat the remedial purpose of anti-trust laws, it appears Plaintiff is referring to the Limitation of Liability Clause in the addendum to the Next Gear Agreement.[8] The Limitation of Liability Clause

---

[8] Plaintiff also cursorily references the "barring of discovery or depositions." *See* Opp. at 10. Presumably, Plaintiff is referring to the clause in the Next Gear Arbitration Clause which provides that "[t]he Arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions." *See* Exhibit A to Compl. (ECF No. 1-2) at 13–14. Plaintiff has not articulated how this limitation on discovery defeats the remedial purpose of anti-trust laws. Accordingly, this argument fails. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the

15

provides, in relevant part, that "in no event shall any lender party be liable for any special, indirect, exemplary, punitive, incidental, multiple or consequential damages . . . arising out of or in connection with this note or any other loan documents . . . ." *See* Exhibit A to Compl. at 14.[9]

Defendant argues that issues relating to limitation of remedies—including the enforceability of such provisions—should be decided by the arbitrator in the first instance. *See* Reply at 6 n.7. The Court agrees because courts "should deny the motion to compel arbitration only where the invalid terms of the arbitration clause render the entire clause void as a matter of state law." *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005). The Eleventh Circuit has held that "even if the remedial restrictions within the arbitration agreement in this case are invalid . . . the parties must still arbitrate" if the remedial restrictions are severable from the remainder of the arbitration agreement. *See Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003). Under Florida law,[10] the severability of contract provisions is determined by examining "whether an offending clause or clauses go

---

parties to formulate arguments."); *see also Larsen v. Citibank FSB*, 871 F.3d 1295, 1316 (11th Cir. 2017) ("clauses limiting discovery in arbitration—much like class-action waivers—cannot be rejected as categorically unconscionable under state law without running afoul of the FAA's pro-arbitration mandate").

Plaintiff also conclusorily argues that "significant costs will be imposed upon Plaintiff in the arbitration of claims." *See* Opp. at 10. While an agreement to arbitrate may be unenforceable if the cost of arbitration precludes the effective vindication of statutory rights in arbitration, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000), the party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Plaintiff's conclusory argument is "purely speculative and insufficient to avoid enforcement" of an arbitration agreement. *Bentley v. EFN W. Palm Motor Sales, LLC*, 214 F. Supp. 3d 1299, 1306 (S.D. Fla. 2016).

[9] The Court notes that the Limitation of Liability Clause, which appears in Section 24 of the addendum to the Next Gear Agreement, is distinct from the Next Gear Arbitration Clause, which appears in section 22 of the addendum to the Next Gear Agreement. No such limitation exists in the Manheim Agreement.

[10] Again, the Court assumes that Florida law applies because the Parties have proceeded under the assumption that Florida law governs the enforceability of the Arbitration Clauses. *See Byers*, 701 F.3d at 1342.

to the very essence of the agreement." *Hochbaum ex rel. Hochbaum v. Palm Garden of Winter Haven, LLC*, 201 So. 3d 218, 222 (Fla. Dist. Ct. App. 2016) (citation and internal quotation marks omitted).

Florida courts generally do not consider damages limitations like the Limitation of Liability Clause to go to the very essence of an arbitration agreement. *See, e.g.*, *Estate of Deresh ex rel. Schneider v. FS Tenant Pool III Tr.*, 95 So. 3d 296, 301 (Fla. Dist. Ct. App. 2012) ("The invalid punitive damages limitation in this case did not go to the heart of the arbitration agreement."); *id.* ("Refusing to sever the punitive damages limitation would cut out the heart of the agreement for a peripheral illegality."). Moreover, Section 19 of the addendum to the Next Gear Agreement contains a severability clause, providing that "[a]ny provision of this Note or any other Loan Document that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of" the Next Gear Agreement. *See* Exhibit A to Compl. (ECF No. 1-2) at 13–14. Therefore, the Court finds that the Limitation of Liability Clause is severable.

"Because any invalid provisions are severable, the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions." *Anders*, 346 F.3d at 1032–33. "Since the case is going to arbitration, an arbitrator and not a court should decide the validity of the remedial restriction provisions, because '[a] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided.'" *Id.* (citing *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003)). Accordingly, the Court does not find that the Limitation of Liability Clause prevents the Court from compelling this case to arbitration, and—consistent with Defendant's representations in the Reply brief—the arbitrator may decide in the first instance whether the Limitation of Liability Clause defeats the remedial purpose of the anti-trust laws and is thus unenforceable.

E. <u>Whether the Claims Against the Nonsignatories May Be Compelled to Arbitration</u>

Plaintiff argues that Defendants Cox Enterprises and Cox Automotive may not compel the claims against them to arbitration because they are not signatories to the Arbitration Clauses. *See* Opp. at 5. Defendants counter that Cox Enterprises and Cox Automotive may compel arbitration because there is a close relationship between the signatory and non-signatory defendants. *See* Reply at 6.[11] None of the cases cited by Defendants stand for the proposition that a close relationship between corporate entities is sufficient to confer the right to compel arbitration to a non-signatory to an arbitration agreement.[12] However, the Court finds Cox Enterprises and Cox Automotive may nevertheless compel arbitration under the doctrine of equitable estoppel.

Generally "one who is not a party to an agreement cannot enforce its terms against one who is a party" because the "right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011). However, "a nonparty may force arbitration if the relevant state contract law allows him to enforce the agreement to arbitrate." *Id.* at 1170 (citation and internal quotation marks omitted). As a result, the "issue of whether a non-signatory to an agreement can use an arbitration clause in that

---

[11] Curiously, Defendant also cites a case for the proposition that, under Florida law, a "nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract." *See* Reply at 7 n.8 (*Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014)). However, whether a non-signatory beneficiary may be required to arbitrate is not the question before the Court. Plaintiff, who is resisting arbitration, is not a non-signatory beneficiary, but rather a signatory to the Arbitration Clauses. Accordingly, the appropriate question is whether and when a non-signatory may compel arbitration against a signatory to an arbitration clause.

[12] *See J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement."); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342 (11th Cir. 1984) (permitting non-signatory defendant to compel arbitration under equitable estoppel theory where claims were "intimately founded in and intertwined with the underlying contract obligations" (internal quotations omitted)); *Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, 2007 U.S. Dist. LEXIS 11999, *35 (S.D. Fla. 2007) (rejecting petitioners' "close relationship" standing theory).

agreement to force a signatory to arbitrate a dispute between them is controlled by state law." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

"Florida and federal courts have recognized that a non-signatory can compel arbitration by a signatory to an arbitration agreement . . . under the doctrine of equitable estoppel . . . ." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. Dist. Ct. App. 2004); *see also Maldonado v. Mattress Firm, Inc.*, No. 8:13-CV-292-T-33AEP, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013).[13] The doctrine of equitable estoppel applies when, *inter alia*, a signatory's claims allege "substantially interdependent and concerted misconduct" by non-signatories and one or more signatories. *Hmied v. Timpano Acquisition, LLC*, No. 6:13-CV-1002-ORL-36, 2014 WL 1293362, at *7 (M.D. Fla. Mar. 28, 2014) (citations omitted); *see also Koechli*, 870 So. 2d at 944. Accordingly, the question before the Court is whether Plaintiff alleges "substantially intertwined and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract." *Escobal v. Celebration Cruise Operator, Inc.*, No. 11-21791-CV, 2011 WL 13175628, at *2–3 (S.D. Fla. June 23, 2011), *aff'd*, 482 F. App'x 475 (11th Cir. 2012).

All of Plaintiff's claims against the non-signatories, Cox Enterprise and Cox Automotive, are inextricably intertwined with the claims against Manheim and Next Gear. In fact, each claim is lodged against all four Defendants without differentiation. *See* Compl. ¶¶ 63–110. Moreover, the claims against all four Defendants rely on a single set of factual allegations showing concerted misconduct. *See generally id.* ¶¶ 16–62. Plaintiff essentially alleges that Defendants have acted in concert by entering into a conspiracy to restrain trade and force Plaintiff into bankruptcy. *See, e.g.*, *id.* ¶ 37 ("Cox [Enterprises] and Cox Automotive by combining many corporations Manheim Auto Auctions, Next Gear Capital . . . have set out to control the resale of the wholesale used car market to monopolize such industry and ha[ve]

---

[13] Again, the Court assumes that Florida law applies because the Parties have proceeded under the assumption that Florida law governs the enforceability of the Arbitration Clauses. *See Byers*, 701 F.3d at 1342.

gained absolute control by price fixing and cartelization, constituting a *per se* violation of antitrust laws."); *id.* ¶ 70 ("Defendants forced Plaintiff into Chapter 11 Bankruptcy . . . ."). As a result, Plaintiff's claims against Cox Enterprise and Cox Automotive "arise out of the same factual allegations of concerted conduct by both" the signatories and non-signatories, and thus "equitable estoppel is warranted." *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003). Therefore, Plaintiff is required to arbitrate its claims against all Defendants. *See Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (holding that district court properly applied equitable estoppel in requiring a plaintiff to arbitrate his claim against a non-signatory because the claims against the non-signatory were "inextricably intertwined with his claims against the contract signatory").

F. Stay of the Action is Appropriate

The FAA provides, in relevant part, that a court compelling arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Because Defendants have specifically requested to stay this action pending the outcome of the arbitration, *see* Mot. at 19, the Court acts in accordance with the plain text of the FAA and "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3. *See Donado v. MRC Express, Inc.*, No. 17-24032-CIV, 2018 WL 318473, at *4 (S.D. Fla. Jan. 4, 2018) (holding the Court is "obligated to stay the case" in light of the plaintiff's request to stay the action); *see also Lloyd v. Hoevensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

IV. **CONCLUSION**

UPON CONSIDERATION of the Motion to Compel (ECF No. 26), the Response in Opposition (ECF No. 32), the Reply in Support (ECF No. 33), the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ordered and adjudged that (1) the Motion to Compel

(ECF No. 26) is GRANTED; (2) Plaintiff must submit its claims to arbitration, and this case is hereby stayed during the pendency of the arbitration; (3) Plaintiff must file a status report on April 22, 2018, and every 90 days thereafter, notifying the Court of the status of the arbitration; (4) the Clerk of the Court is instructed to administratively close this case; and (5) all other pending motions are denied as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 22nd day of January, 2018.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc: All counsel of record